Case number 25-1152, John Doe, Petitioner v. Securities and Exchange Commission. Mr. Havian for the Petitioner, Mr. Yoder for the Respondent. Good morning, Your Honor. May it please the Court, my name is Eric Havian, excuse me for a second, Your Honor. And I represent the Petitioner, John Doe, in this appeal. It's important to keep in mind, I think, that there's no dispute that but for John Doe's extensive documentation and nine days of being interviewed by government agents, the worldwide bribery conspiracy would never have been uncovered and the government would not have recovered hundreds of millions of dollars. There's no dispute about that. And there's also no dispute that, until very recently, John Doe would have received an award from the Commission. But one year ago today, the Commission abruptly changed the rules of its whistleblower program. And it changed them in a way that essentially flipped the existing rule upside down and essentially put it in a position of being an outlier among all of the other whistleblower reward programs. And in that situation, we believe that the Commission's justification for this abrupt change, where it departed from the CFTC, from the NHTSA whistleblower program, from the False Claims Act, can't be supported. Well, the CFTC is allowed to change its policy, isn't it? Of course. They can do so through notice and comment rulemaking, but they can't do it in a way that is inconsistent with the statutory text. And that is our view here. That's our argument here. I have a lot of sympathy for your client, but why didn't he go to the SEC when the DOJ told him, told the journalist to tell him he should go to the SEC and then six months go by and he would have been fine if he had just been advised? We don't know what the journalist told our client. But the point is, Your Honor, this is a statutory interpretation case. So I don't have an answer for the court's question. But he's a foreigner. Other than the statutory interpretation, too, there is a provision where the agency can waive all these requirements under the correct circumstances. And it seemed like you have a strong argument that, you know, the policy changed right before, you know, he was due for an award, et cetera, but you didn't appeal that aspect of it. We did not, Your Honor. We felt that the statutory interpretation question was really critically important and also that the Commission has a lot of discretion. Because you just reversed on it. Well, we submitted a 28-J letter. I understand. I was on that panel. I know you were. That's one of the three legs of our argument here is that decision. I plan to talk about that, talk about it now if you want. I think I was going to put it a little bit later. No. Go ahead and talk about your statutory interpretation. Okay. So the first leg of our argument is that if you look at the key phrase here is original information. That's the critical central facet of the whistleblower program. But is there really three steps? You are the whistleblower. Yes. You, as whistleblower, provide the information, and three, the information leads to the prosecution of the case. Yes, Your Honor. And original information is defined as any information not previously known to the Commission. Okay. So let's say we give you that. But you still have the whistleblower having to provide the information, too. And I can only suspect that maybe the policy behind that is, let's say your information gets in the hands of a journalist or, you know, anybody else. You have to be the one to go to the SEC to kind of take ownership, almost like the lottery ticket you must present yourself. And so maybe that's part of the whistleblower must be the provider of the information. And then you have the 120-day clawback, essentially giving you another opportunity to get there in time, but not eight months later. Your Honor, this is where the decision that came out on Friday, I think, is very important. Because on Friday, this Court construed the phrase, what does it mean to voluntarily provide original information to the Commission? And the Commission here argues that phrase, provided to the Commission, means you have to do that by handing it to the Commission directly. The trouble is, you cannot reconcile that interpretation with what this Court addressed on Friday. And the reason you can't is, the issue in that case was, when you hand information to a federal agency, like the Justice Department, are you voluntarily providing that information to the Commission? And this Court said, yes. And the reason you don't have to provide it, you don't have to hand it over, is that because when you hand it to the Justice Department, they routinely share information and referrals with the Commission. And so this— I think you're over-reading that case a little bit. Well, the Commission— That was about voluntarily, whether you came in first or they had to subpoena you and bring you in. I understand that, but— I think you're over-reading a little. But the regulation doesn't create that distinction. The regulation says, if you provide it to the Justice Department, then we will deem that you voluntarily provided it to us. So how can those things both be true? How can the phrase—Congress used the phrase, delivered or provided to the Commission. Their entire argument is, that phrase can only mean one thing. You handed it to the Commission. How can they have a regulation that says— Well, there's a whole statutory scheme here, right? You can hand it to the Commission directly. If you hand it to an agency like the Justice Department, then there's this look-back provision where we can deem you to have given it to the SEC if you file with the SEC within 120 days. So there's actually a whole procedure for this. But the look-back provision, the Commission has always interpreted and interprets it here. Well, you wouldn't need the look-back provision if giving it to the Justice Department equals giving it to the SEC. The look-back—if you look at the language of the look-back provision, it doesn't say you're ineligible if you don't meet the 120-day requirement. It says, we will not—it's designed to address multiple whistleblowers. It preserves, according to the SEC in their brief here, footnote four of their brief, it's designed to address the situation. It preserves your place in the queue. So if there are multiple whistleblowers, if you look at the language of the regulation, it says you will relate back when you first went to the Justice Department, as long as you give us your TCR within 120 days. It doesn't say you're out of luck. So if there are no multiple whistleblowers, then the provision doesn't matter. So we didn't comply with the 120-day provision. What is the conclusion? Our information does not relate back. But it doesn't have to because there's no second whistleblower. What the regulation—the commission itself in this regulation offered a regulation that is inconsistent with its current interpretation because it came up with this on the fly in an enforcement proceeding. And so how can you even do a relation back in the sense the court is saying? When Congress has said, you have to show—this is their argument that they're making. You provided information to the commission, and they say that can only mean one thing, directly provided to the commission. Well, if Congress— That is the most natural reading. But if Congress— If the language is whistleblowers who voluntarily provided original information to the commission that led to the successful enforcement of a judicial administrative action, the most natural reading is what you gave directly to the commission led to the successful enforcement. Your Honor, I don't believe you can reconcile that interpretation with the commission's own regulation that says if you give it to the Justice Department and they later give it to us, you have now voluntarily provided original information to the commission. I don't see how those two can possibly be compatible because you're saying Congress required that— So what are you relying on for that? Providing it to the Justice Department equals providing it to us. The court's decision addressed the commission's regulation 21F-4A2. And so if you look at 21F-4A2, it says— Is that in the— I'm sorry. I'm looking at the— Your addendum or something? I'm sorry? Is that in your addendum or something? I want to look at it. It's on the 28-J letter. Yes. I didn't include the regulation itself, but it is in—we've referred to this regulation throughout. Okay. And 21A-F2 says, your submission of information to the commission will be considered voluntary if you voluntarily provided the same information to one of the other authorities defined above. So my question is, how can that be possible? How can that regulation exist if this— If you voluntarily provide to the other ones and then you file with us for 120 days, is that— That's not what A2 says. There's nothing about 120 days. That's a separate regulation that the commission interprets to mean if there are multiple whistleblowers, if you give it to the Justice Department and then— Is that a regulation, though? That's a different regulation. But the statute says to the commission. That's my point. The statute says to the commission, and the question is, what does it mean, provided to the commission? What does the word provided mean in the statute? And what I'm saying is this regulation, as interpreted by this court in Friday's decision, but on the face of it, this regulation can't be squared with the commission's interpretation of the word provided. How can the word provided, for purposes of voluntariness, mean you can provide it to the Justice Department and that's providing it to the commission? How can it mean that in that context and yet in this other context— Okay. Now I'm looking at 21F4A2. Yes. It says your submission of information to the commission will be considered voluntary if you voluntarily provided the same information to one of the other authorities identified above. That—you're over-reading this. This is not saying providing it to one of the other authorities equals providing to the commission. No, but— That's not what this says. But it has to mean that, because otherwise you won't— You will consider it voluntarily provided. That means we're not going to prevent you from getting an award under these circumstances. Right. That is not what this says. But if the commission is correct in its reading of Dodd-Frank, that Dodd-Frank requires you to hand it directly to the commission or you don't have to— That's not what the statute says. The statute says to the commission. Yes. It says to the commission. And this language suggests that that does not mean handing it personally. This language suggests, and the court's opinion suggests— But aren't you essentially just asking a whistleblower to show up? Because again, you could get it in the hands of a journalist who turns it over, but you didn't intend to be a whistleblower. But then later on, five years later, you want that credit when you see that, oh, there's some award or something. Well, when you hand it to another federal agency, there's not going to be any five-year time period. And that's what our client did here. But my intent of the question is that the whistleblower shows up. If you give something to a third party, whether it's a journalist or even not the DOJ, they're asking you as a whistleblower to show up to say that that was my intent for you to have this information, because somebody could just in these days just hand it over. Well, let me try a somewhat different tack. I think this argument is a very clear textual indication, but if you look at the definition of original information, Congress didn't come up with that out of the blue. The definition of original information is all information not known to the commission. That's the core, with one exception and one exception only, which is information that's from an original source. So that's the only exception Congress created. So to give you that, isn't the whistleblower still required to show up? Eventually, just like under the False Claims Act, you're required to show up. You're required to file a complaint at some point. Okay, but then this one doesn't show up in that 120-day period. Well, again, the 120-day look-back period is something that relates to the sequencing if there are multiple whistleblowers. It's clear because that is not, that's a separate regulation that says, we're going to give you relation back, so we don't get relation back. Okay, so let's say that there is no other person. You have a person who, the alleged whistleblower, hands it over to a third party. Third party hands it over to SEC. You go way beyond three years, and then you want to have a look-back, but there's still nobody else who gave the information over. Do you still get credit? You don't get a look-back, but you've satisfied the requirement to provide information to the commission. As the regulation states, as this court noted in its Friday decision, but more importantly- But I think you have to satisfy all of it because if they've already proceeded with their investigation based on other information, and yours comes too late, and it hasn't led to a successful enforcement, then you don't get an award, right? Well, Your Honor, this issue, this language was based on the False Claims Act. There's no dispute about that, and we know what the purpose was when Congress used this same language, original source, in the False Claims Act. This court's Findley decision explained why Congress did that, and it was because of exactly what the commission is doing here. I think it's a little different for this reason. It seems to me that I think that you have a plausible reading, but I think that the better reading is what the government is proposing, which is that this language is straightforward and means what it says. It says you have to provide it to the commission, and that information has to lead to the successful enforcement. And the reason is, in this context, we're trying to incentivize whistleblowers to bring their information to the SEC so that the SEC can investigate. The whole purpose of this program is to assist the SEC in its enforcement. So if you give it to a journalist, if you give it to the Justice Department, you're not assisting the SEC in its enforcement goals, and so that's why you have to meet these requirements. You're right. It's very unfortunate. I just feel like your client is the source of the information. If only he had gone to the SEC when he was told to do so, he would have gotten the reward that he deserved. But under circumstances, he seems to be out of compliance with this statute. And I think that you're—I've puzzled over this a lot. I think that your interpretation is plausible, but I think this is the better interpretation because of the purpose of this whole framework. Well, let me see if I can address that concern, because I do think that ours is the better reason, and I think it's because three different things all point to our interpretation. The first is the language of this rule, and I think when the court—I think sitting down and looking at how can this voluntary—how can voluntarily provide it to the commission mean you can hand it to the Justice Department in one context, and yet it means no, you have to hand it— It'll be considered voluntary. I know, but you have to stay with— You can see that this being that direct, and it's a regulation, and we're interpreting a statute. Well, I'm just—I'm talking about the commission's interpretation of the Dodd-Frank language. I think the Dodd-Frank—the other—the second piece of it is when you look at the False Claims Act, this same phrase was used to get to the opposite result. But they're not trying to—in this context, we're trying to get people to give information to the SEC, so we're incentivizing people to bring things to the SEC. And I think that that is— That's why it's different. And that's—the same is true with the False Claims Act. The incentive was to bring information and evidence to the government, and in the context of the—in this instance, this exception, this original score exception, has never—as far as we can tell, we've looked at 15 years' worth of cases. We cannot find a single case where this rule would have been invoked. And yet, this was the one exception that Congress created to the original information definition. One exception, never invoked. It's—the SEC's interpretation of original source is a dead—makes it a dead letter. It's a central feature— It's not a dead letter because there is a situation in which somebody else would take your information, bring it to the agency. Agency doesn't act on it. You come along later and bring your information. Then it acts on it. So it does lead to— I understand. This is the whole scenario that is in the reply briefs, but that shows that that doesn't make it a dead letter. It's all about the order in which you show that, which is another argument you've made. It makes it a unicorn because we can't find a single case in 15 years, and they haven't cited one. And if you look at the False Claims Act provision, it is designed to have the opposite— It doesn't make it a dead letter. No, it makes it a—Your Honor, you're correct. It makes it a unicorn. And the problem is it's the opposite under the False Claims Act. Congress used this language in the False Claims Act to stop what the SEC is doing here, which is to say, if the government already has your information, even if it's your original information, we can launch an investigation and you get nothing. Congress said that. This court said in Findlay, that killed the goose that laid the golden egg. So Congress passed the original source rule in 1986. Then the same Congress in 2010, which was amending that rule, passed this original source provision, but now the SEC says it means the opposite. It means if the government has your information, you are out of line. I'm wrong because I'm not an expert on the False Claims Act, but they are just trying to get people to come forward and whistleblow on the government. And so we want to incentivize whistleblowing on the government. And so that would, it seems, allow a broader definition, whereas here we only want to incentivize people to come to the SEC. And so that's why this provision reads as it does, to the commission. Well, Your Honor. Let me stop you. I don't understand why you haven't pointed out the words led to. I mean, it isn't original information that triggers the investigation. You've got more latitude with led to. And the False Claims Act does not use led to. That to me indicates, well, it may or may not, but I don't understand why, and I don't think your colleague has either, talked about the use of led to, which makes you think ultimately they're going to investigate this. It doesn't say triggered. If it said triggered, I think you'd have to admit you'd be out of court. That would be a very different case. I agree, Your Honor. And the led to language does indicate, and it's information that has to lead to the investigation. Not a submission. It's information. And the original information, Congress did not use the term submission. It could have, but it said original information. And that's what must lead to the recovery. Commission, though. Well, but it was to the commission. What Congress cared about, both under the False Claims Act and under Dodd-Frank, was not how did this information get into the government's hands. If information leads to a recovery, Congress said we have to reward those people. And the reason it wrote the original source provision is that wasn't happening. The government was taking people's information that they were the original sources of, and they were launching an investigation and cutting out the whistleblower. And this court said, oh, Congress realized they killed the goose that was laying the golden eggs. Whistleblowers, if they think they're not going to get credit for original information, there are these technicalities, they stop coming forward. And so we now have a regime where they've done the exact opposite. They have resurrected that regime. Now the regime is, if we already have your information, you don't recover. In 15 years, nobody has fit into that fact pattern that the court, that Judge Pan identified, where the information gets to the commission from a third party, the commission does nothing with it, and then the whistleblower submits a TCR, and they magically say, oh, well, let's go investigate, and they recover a bunch of money. Never happened. So the problem is, we now have a regime that's the opposite of what the impetus was for the original source rule back in 1986. We now have a regime where pretty much all the time, we know all the time so far to date, when the commission already has your information, you're not going to get a reward. If they act on it right away. Well, if they act on it, right, but again, we can't find a single fact scenario, and the commission hasn't cited any, where that exception has ever happened. So we now effectively have turned the False Claims Act impetus, the history of this phrase, original information, or excuse me, original source, on its head. Congress put that in, in the 1986 False Claims Act, specifically to stop the practice where the government says, we already have your information. We don't need you, because we have your information. If you haven't filed a complaint before we launch, you're out of luck. And they said, that's a bad outcome. We want to change it. And now the idea is Congress then turned around and said, let's use that. It's a look back provision, right? Well, that's a right. To give you some. The look back provision, again, we have to look at the statutory test, because their interpretation of the statutory text is what's at issue in our appeal. We say it's in, so that regardless of whether. I'm saying it's not so outrageous for whistleblowers, because there is this kind of safety valve that you've got 120 days after you get to. The look back provision, if you really think about it, how do they have authority to write that look back? Under our interpretation, they can write the look back provision, it's fine. Under their interpretation, the look back provision is violative of the statute. No, because there's also a statutory provision that says you have to submit it in the way that the commission. Right. In the manner. And so they've decided this is the manner. Right. They say the phrase provided to the commission means you handed it to the commission and that led to Judge Henderson's term. No, but in the manner in which they choose, and they say we treat this as voluntary, we treat this as. They're giving grace to the whistleblower, okay? I don't think that you should be saying they shouldn't be doing that. Well, no, I'm saying under their interpretation, they can't do it, because their interpretation is Congress was clear. You must deliver your information personally in the form of a TCR.  And you agree that you have to do that under any interpretation. Yeah, exactly. We agree. The other way you provide the information is through a TCR. Now Judge Childs points out that what happens if that's five years later? Well, first of all, what our client did was hand it to another federal agency. That's not going to happen. Well, he handed it to a journalist. Well, no, but he also handed it. First, his agent went to the Justice Department. He went to the Justice Department. He handed it to a journalist. Well, actually, you're right. I stand corrected. Yes, exactly. But he told him, take this to whatever federal agency it needs to go to, and the journalist picked it up. Right, and then the agency said he should really go to the SEC. At some point in the process, the agent told, the Justice Department told Matt, but it's not entirely, I mean, I don't know what happened in that context, but the point is that the Do you really not know what happened in that context, or can you just not say? It's just not in the record. Okay. I mean, I can say all kinds of things that aren't in the record, but the court wouldn't be happy with me if I did that. The only thing, the thing I want to emphasize here is that the regulation that they pass is inconsistent with their own current interpretation. It was perfectly consistent with the interpretation that they had a year ago. It was perfectly consistent with that interpretation, but their new interpretation depends on the words Congress used, meaning one thing and one thing only. Provided to the commission, voluntarily provided to the commission, means you have to hand it over, and that's what leads to the investigation. And with that 120-day look back, that can't work, because what if you give your information to the Justice Department on day one, and then on day 30, they hand it over to the SEC, the SEC opens an investigation, okay, your information to the Justice Department in that circumstance under their interpretation, that was not provided to the commission. And so how can the commission then pass? You have to provide your TCR within 120 days, and then it'll be considered that you predated the Justice Department. Yeah, but- You're first in line. But under their interpretation of Congress's words, that violates the statute. They say- I don't think it does, because the Congress's words were you have to submit it in the manner that the agency decides, and this is what they've decided. Right, but they say the phrase voluntarily provided to the commission means personally handed to the commission and led to the investigation. That's what they say Congress requires. Right, and so in this look back provision, they're going to say we're going to consider it as if you came first. But that's saying- Consider it that way. I don't think that you should be arguing against something that's favorable to whistleblowers. This is favorable to whistleblowers. Your Honor, it's favorable to whistleblowers under our interpretation as well. What I'm saying is their current interpretation, which they changed, they changed it in a way that's not consistent with the statute. They are allowed to change it, but they are not allowed to change it in a way that is inconsistent with the statutory text. And so that is the problem, is that if the phrase voluntarily provided original information to the commission that led to an investigation in the circumstance we're now describing, that is not satisfied. And you now violate a congressional directive as they interpret that directive. And so I don't know how they can do- I agree it's favorable to whistleblowers, but I don't know how they can enact it under their current interpretation. The original commission- Under the provision of the statute that says in the manner that the commission decides. I appreciate that, Your Honor. I accept the- We'll give you a couple minutes and we'll talk. I told the clerk I wanted three minutes for rebuttal, and I forgot to mention that to the court. But I would love some rebuttal time if the court will- Mr. Yoder. May it please the court, Stephen Yoder for the Securities and Exchange Commission. Congress designed the whistleblower statute to motivate individuals to tell the commission about wrongdoing so the commission can bring an appropriate enforcement action. That design is evident in the statutory command that a whistleblower must provide information to the commission in order to lead to the commission's action. Do you think led to means triggered? We think that led to means what is set forth in Commission's Rule 21F4C. This court previously cited- we cited in our brief that that rule sets forth the exclusive conditions for satisfying the led to requirement. So we believe that the commission's interpretation of led to in that manner is exclusive, and that's how we interpret it. Does that regulation amount to trigger? In some way, in C1, it could be compared to trigger because the question is whether the submission of information caused the staff to open an investigation, reopen an investigation, or inquire into new conduct. And so I believe that could be analogized to trigger. C2 speaks to substantially contributing to an investigation or action that's already underway. That's much less analogous to triggering. Is that responsive, Your Honor? Yes, thank you. Sure. I would like to respond to my friend's argument about B7 and alleged inconsistency with the commission's current interpretation of the statute. The commission interpreted its statute and reinterpreted it and clarified its interpretation in 2025 in response to the Supreme Court's decision in digital realty, the Second Circuit's decision in Kogor, and the Third Circuit's decision in Doe as reflected in our brief. And we believe this- I would submit this is exactly the sort of thing that the court would want the commission to do, is to stay attuned to developments in the law and actually respond to criticism that it receives from courts in litigation. Now, in terms of B7, that provision is not an issue in this case because, as my friend conceded, he is not challenging the denial of an exemption under that provision. I would point out for the court's benefit that the commission adopted B7 as part of its whistleblower rules in 2011, when Chevron was still the law of the land. And the commission understood it had some degree of flexibility under the statute in order to, as Judge Penn put it, allow some grace for whistleblowers. And what do you think is the policy behind the whistleblower must be the provider of the information, meaning directly as opposed to indirectly through someone else? Yes, it's exactly what Judge Penn said. It's Congress's purpose to incentivize whistleblowers to come tell the commission. I mean, that's reflected in the digital realty decision, above all. Justice Ginsburg's opinion for the court could not be clearer. She said that the definition of whistleblower providing information to the commission is clear and conclusive. She was speaking in the retaliation.  Well, I was going to say, so the whistleblower could give information that actually leads to the prosecution, but we seem to be hung up on, but must provide to the commission directly. Yes, that's correct. Even if the information did lead to the prosecution of the information. Yes, that's correct. And I would point out that the statute does not say either directly or indirectly. Right, but it seems like we're focused on that the whistleblower must provide it, and then is that provisioned directly? Exactly. That is the commission's interpretation. So how does that incentivize the whistleblower? Because if you got the information that led to the prosecution and that was successful, then how is the beginning piece about however the information got to the commission, as long as it attaches to that whistleblower? Why does that matter? Understood. It matters because Congress wanted whistleblowers to come to the commission so the commission could take action. And Congress easily could have enacted whistleblower statutes for other federal agencies, and in fact Dodd-Frank did. Dodd-Frank separately enacted a whistleblower statute for the CFTC, which operates according to its own terms in which my friend has cited in his brief. And so I point out that Congress did this for two agencies. It did it in very limited, narrow fashion to encourage people to tell those agencies specifically. My understanding is that since then, the Justice Department has started its own whistleblower program, and there's nothing to prevent Congress from doing this for individual agencies across the board wherever it sees the need to do so. But this particular statute was enacted with the Securities and Exchange Commission in mind, and that's why we believe that our interpretation is the better interpretation that this court should accept. I'd also like to speak to my friend's discussion about the False Claims Act. The False Claims Act, as you know, is about relators bringing private actions on behalf of the government alleging fraud against the government of one sort or another. In that context, there is no question of the provision of information. The relator doesn't have to provide information to herself for bringing an action. Even though Congress borrowed from that statute, it made important changes when it crafted the commission's whistleblower statute. One of those changes was to insert language about providing information to the commission that leads to a successful enforcement action. And as the panel already pointed out, the False Claims Act does not contain that similar lead-to language. That's an important linguistic distinction between the statutes, and as we explained in our brief, it reflects the different operation or function of the statutes, private actions versus commission actions. And the original information exclusion was adopted in the False Claims Act in the 1940s, as I understand it, and it was later amended to include, pardon me, I should say, the original information language does not appear in the False Claims Act per se. The False Claims Act contains a public disclosure bar. It was adopted in the 1940s to preclude relator actions where the relator is simply repackaging information that's already in the public sphere. In 1986, Congress amended that to add an exception for a relator who's the original source of the information in the public sphere. Congress barred from that, obviously, and when talking about original information in the commission's statute, but as we explained, we view that as a separate requirement from the commission leading to, and we believe it would be unnatural to eliminate the causal requirement between the submission of information and the commission bringing its action. That would result in the submission of information essentially being a ministerial act, and as you suggested earlier, Judge Childs, that would result in whistleblowers potentially coming to the commission years later after the commission has brought its enforcement action saying, oh, well, you know, I was behind that information that you used in your information back in the day. I'd like credit. I'd like to get paid, and maybe in a perfect world, they ought to be paid. I'm not going to dispute platonic fairness, but in this particular context, Congress was acting to create particular incentives for people to come to the commission. It's not entirely about fairness from the claimant's perspective. So for example, a claimant like John Doe could put his career, even his life, on the line to come forward and tell the government about wrongdoing, but that claimant is out of luck if somebody came in a week ago with the same information, and that information already caused the commission to open an investigation. That's not fair, but that's the statute Congress wrote. Similarly, if the commission brings an action that results in less than a million dollars in monetary sanctions, then it doesn't count as a qualified covered action as defined by the statute, and the commission is not authorized to pay awards. So the statute enacts what I would call rough justice in order to incentivize a particular form of behavior on the part of whistleblowers to encourage them to come to the commission. And I think that purpose is all the more strikingly highlighted on the facts of this case, where John Doe can't even offer an explanation for why he waited over a year after being told about the commission's program to report directly to the commission. I'm happy to answer any further questions the Court has. If not, I'm happy to rest on my brief. Thank you. Two minutes. Thank you, Your Honor. Appreciate that. I'll be brief. I want to address one quick question about what incentives were there. The commission has many incentives to not wait the five years that they've talked about. If you got after Friday's decision, it's quite clear. If you wait, and you get a call from the commission because they started an investigation, you won't be deemed to be voluntary. If you wait, another whistleblower may, as my colleague noted, another whistleblower may come in and file their case. The commission may figure out the fraud through some other way. There are tremendous incentives not to wait, and you know, I've been doing this for a very long time. That's not what whistleblowers do. They don't say, well, let's just sit back and see what happens. So I think there are plenty of incentives, and if the commission wanted to put in more, there's a rulemaking process they can use. The second thing I wanted to do was clarify the sequencing under the False Claims Act, because it clearly, the commission says the original source provision itself was modeled on the False Claims Act, and in the False Claims Act, what you have is if someone has, if the government has someone's original information, not given by them, but they got it from some other source, and the government conducts an investigation, and then the whistleblower only later files their complaint, because that's permissible. The whistleblower recovers. The idea that Congress took that same tool and flipped it on its head and created a regime where if the commission already has the information, there's no way a whistleblower is going to get a reward, except for the unicorn. So it flipped the regime that Congress used as its model. Now, I agree, Judge Pan, there's a reason Congress could have decided to do that, but why would they choose the tool that they used to achieve exactly the opposite effect in the False Claims Act? And I would add, the same Congress that wrote Dodd-Frank amended this same original source provision. So they had it right in front of them when they were writing Dodd-Frank, and yet they chose this phrase, original source, to embody what they meant. They didn't even bother to define it, because it was so well-defined, because it's litigated all the time under the False Claims Act. And there's no dispute here, and this court has noted, that the purpose of that provision was to stop exactly the regime that the commission has now changed, as of a year ago, into the regime where there's really almost no way. I mean, if you know the law, if you know about the 120-day provision, you're probably just going to go to the commission with your TCR in the very first instance, because why would you wait? And so there is that safety valve that the commission says they have. You need to wind it up. Thank you, Your Honor. That's all I have. Thank you for the court's attention.
judges: Henderson; Childs; Pan